## In Re Anonymous No. 12 D.B. 73, 12 D.B. 74

Disciplinary Board Docket No. 12 D.B. 73, 12 D.B. 74.

CURRAN, Board Member, March 9, 1984—

### I. HISTORY OF PROCEEDINGS

On April 12, 1973, your honorable court suspended petitioner, [      ], pending final disposition of disciplinary proceedings arising from a charge of mail fraud and endeavoring to obstruct justice brought against him by the United States Attorney's Office.

By order dated September 5, 1974, your honorable court disbarred petitioner upon his consent.

On June 19, 1980, petitioner filed a petition for reinstatement with the Disciplinary Board of the Supreme Court of Pennsylvania.

On September 8, 1980, a hearing was held pursuant to that Petition. An additional day was scheduled at the conclusion of this hearing, but petitioner withdrew this petition for reinstatement upon the advice of counsel, so that the second day of hearing was not held.

Petitioner filed a petition for reinstatement once again on December 6, 1982 and hearings were held

on May 25, 1983 and June 9, 1983 before hearing committee [      ] consisting of:

[            ]

The record of the hearing held on September 8, 1980 was incorporated into the Petition for Reinstatement for which hearings were held May 25, 1983 and June 9, 1983.

The question for consideration by the hearing panel was whether petitioner has met the requirements of the rule governing the reinstatement of a former member of the Bar to the practice of law. The rule in question was 218 R.D.E. which provided that:

In order to be reinstated "a disbarred or suspended attorney shall have the burden of demonstrating by clear and convincing evidence that (he) has the moral qualifications, competency and learning in the law required for admission to practice law in the Commonwealth and that the resumption of the practice of law within the Commonwealth by such persons will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest."

Counsel for both parties filed briefs.

Hearing committee [      ] filed its report on October 4, 1983. That hearing committee recommended that the Disciplinary Board not reinstate petitioner to the practice of law.

On October 18, 1983 Disciplinary Counsel notified the Disciplinary Board that no exceptions would be filed. On October 25, 1983, the Chairman of the Disciplinary Board granted petitioner an extension of time in which to file a brief on exceptions.

On November 4, 1983, a Brief on Exceptions was filed by petitioner.

On November 10, 1983, the Chairman of the Disciplinary Board designated a Panel, consisting of

James J. Curran, Jr., Chairman; Winfield Keck and Sidney L. Krawitz to hear oral argument on November 30, 1983.

Oral argument was held in the court house in Stroudsburg on November 30, 1983.

## II. STATEMENT OF FACTS

[        ] (petitioner) was a former city commissioner of [      ] who was convicted on December 10, 1972, of nine (9) counts of mail fraud, conspiracy and endeavoring to obstruct justice in connection with a criminal conspiracy to rig or influence contracts for the printing of election ballots and other materials for the city commissioners and the printing of official documents of city council which properly should have been awarded by free and competitive bids without fraud and collusion.

One year later, on December 10, 1973, petitioner pleaded guilty to income tax evasion and filing of false income tax returns.

As a result of his conviction on December 10, 1972, Petitioner was sentenced by the Honorable [A] to six years in prison, $19,000 in fines and was required to resign from his office as city commissioner. Additionally he was to be subjected to a three (3) year probation period at the end of his jail commitment or parole. During the time of his probation, Petitioner was prohibited from the practice of law.

As a result of the guilty plea he entered in his income tax case on December 10, 1973, Petitioner was sentenced by the Honorable [B], to serve three years in prison to be served concurrently with his time served under the mail fraud conviction and to pay a fine of $5,000.

From December 10, 1973 to April 10, 1975, Petitioner was confined to [C] Federal Penitentiary.

Upon his release from prison, Petitioner was placed on parole until August 16, 1978, at which time the three year probation commenced. Petitioner completed his probation on August 16, 1981.

## III.  DISCUSSION

In reaching its conclusion that petitioner should not be reinstated to the practice of law, the hearing committee considered two factors: (1) the nature of petitioner's offenses and (2) his conduct since the time of his release from prison.

The hearing committee properly found that petitioner's offenses had been extremely serious and detrimental to the public interest since the offenses were committed while petitioner was a public official.

However, the hearing committee's conclusion that petitioner was not worthy of reinstatement was based on its belief that petitioner's conduct after his release from prison had been duplicitious in that he refused to acknowledge his guilt of the crimes for which he was convicted.

The hearing committee felt that it was necessary for petitioner to show "whether the public interest will be served, whether it will be assured that no harm will be done to the public interest, if petitioner is readmitted to the practice of law." (Hearing Committee Report, Page 4)

Petitioner testified before the hearing committee at his hearing on September 30, 1980 that "he had identified himself as a lawyer on a petition, (R-2(e)) seeking elective office" as a democratic committeeman in the City of [     ].

Petitioner further testified that he believed himself to be a lawyer and attorney at the time he filed. (R-2(e)).

Although petitioner testified at the hearing on September 30, 1980 that he did not deny his criminal conviction, in an answer filed in a civil suit (Exhibit R-2(b)) in response to the complaint (R-2(a)) initiating the suit, he admitted that his denials in Paragraphs 14, 15, 16, 17 and 18 on (R-2(b)) were of facts which gave rise to the convictions themselves.

Petitioner testified that he made this Answer because he felt innocent of the tax charges to which he entered a guilty plea.

Petitioner testified that he had written a letter (Exhibit R-2(c)) to Judge [A] in September, 1978, in which he had requested early termination of his probation. Petitioner further testified that he did so only to seek early termination of his probation and not for the purpose of making himself eligible for reinstatement to the bar. This testimony is in direct contradiction to Exhibit R-2(c) wherein petitioner states "I respectfully hope that you will consider my discharge from probation. (sic). So that I may file my Petition for Reinstatement to practice law with the hope that it will be granted. I am now past (sic) 68 years of age and otherwise, I will be past (sic) 71 years when I can have my wish and desire granted to file said petition."

In his testimony of September 30, 1980, Petitioner stated that he believed himself to be a lawyer and that he would remain so until his dying day. He further testified at the time, that in his heart, he did not believe himself to be guilty of the crimes for which he had been convicted. However, on June 9, 1983, Petitioner testified that he was guilty of the crimes that he had been convicted and that he was not a lawyer.

Petitioner testified on June 9, 1983 that he had been wrong in his testimony of September 30, 1980 with respect to his being a lawyer and with respect to his guilt for the income tax evasion charge and that he had made this determination after reading the transcript of his testimony on September 30, 1980.

Shortly after he gave the testimony, it was found not to be credible by the hearing committee, as petitioner had testified, in a civil hearing on June 16, 1981, that he did not believe he was guilty of the income tax evasion charge.

Petitioner's testimony on June 9, 1983, in the opinion of the hearing committee, showed that in his heart he believed that he was not guilty and that he had tailored his testimony to conform to recent case law which he believed would entitle him to be reinstated.

Petitioner failed to file Personal Property Income Tax Forms with the City of [      ] and to timely pay personal property taxes for the years 1980, 1981 and 1982. (Stipulation of parties). The hearing committee felt that this was further evidence of his lack of reformation, since it occurred after petitioner's conviction for income tax evasion.

The Disciplinary Board, however, felt that the very small amount of the value of the Pennsylvania Real Estate Trust Bonds for which petitioner was required to file tax returns, and the small amount of the taxes due gave credibility to petitioner's contention that he had simply overlooked his ownership of these bonds and so had neglected to file his tax returns.

Petitioner's ownership of the bonds in question were discovered as a result of a random audit of the Personal Property Tax Division in which subjects were chosen by their Social Security number. As a

result of the audit, petitioner paid the following taxes, interest and penalties:

A. Calendar Year 1976  30.94 tax
11.60 penalties & interest
42.54 total

B. Calendar Year 1977  33.72 tax
10.62 penalties & interest
44.34 total

C. Calendar Year 1978  33.72 tax
8.60 penalties & interest
42.32 total

D. Calendar Year 1979  7.14 tax
1.40 penalties & interest
8.54 total

E. Calendar Year 1980  0 tax
2.16 penalties & interest
2.16 total

Petitioner sought early parole, but was opposed by the Assistant United States Attorney who had prosecuted him.

While petitioner was incarcerated, he was requested to appear before a grand jury to testify but he refused to do so.

After petitioner learned that the U.S. Attorney's Office opposed his application for early parole, he contacted that office and offered to appear before the grand jury. Petitioner withdrew his offer to testify upon being granted early parole, and did not thereafter testify before the grand jury.

The hearing committee found petitioner's conduct in this matter to be duplicitious. However, the parole was granted by the court without the consent of the United States Attorney's office which had not yet accepted petitioner's offer to testify.

A reinstatement proceeding is a searching inquiry into a lawyer's present professional and moral fit-

ness to resume the practice of law. The nature and extent of the Petitioner's rehabilitative efforts and degree of success achieved in the rehabilitative process must be fully explored in such proceedings. The burden is on petitioners, who must establish by clear and convincing evidence that the prerequisites for reinstatement set forth in Pa. R.D.E. 218(c)(3)(1) have been met.

In determining whether reinstatement is warranted in the instant case, we must consider a number of factors, including the following: The nature and circumstances of the misconduct for which petitioner was disciplined; petitioner's present qualifications and competence in legal skills; and petitioner's character and attitude subsequent to suspension. See In Re Hiss, 368 Mass. 467, 333 N.E. 2d 429 (1975): In Re Barton, 273 Md. 377, 320 A.2d 102 (1974); Petition of Eddleman, 77 Wash, 2d 42, 549 P. 2d 387 (1969); and Wirtzman Reinstatement, 85 P.L.J. 390 (1937).

It is uncontroverted that Petitioner's misconduct which resulted in his disbarment was grave indeed. However, our Supreme Court has stated:

"While the egregiousness of a disbarred attorney's offense certainly has a bearing on whether reinstatement is warranted, nonetheless, the main thrust of the proceeding is whether the disciplined attorney is now morally fit and technically competent to engage in the practice of law." Phila. Newspapers, Inc., 468 Pa. at 386, footnote no. 6, 363 A2d at 781.

As was earlier stated, in relevant part, in Wirtzman Reinstatement, supra:

"We reiterate our view that the action of the court was proper under the circumstances but that conclusion . . . is not the controlling element in determining the action to be taken upon the pending pe-

tition for reinstatement. Courts do not disbar without just cause and if, in reinstatement proceedings, we were to give consideration solely to the question of the propriety of the court's action, no one would be reinstated. An interpretation so harsh was never intended to prevail, . . . Therefore, . . . the determination of the petitioner's conduct, demeanor and character since his disbarment becomes of prime and ruling importance." Id. at 397.

Petitioner's integrity and moral qualifications, competency and learning in the law have been attested to by attorneys [D], [E], [F], [G], [H], [I], [J], [K], [L] and [M]. Also [N], Esq. testified that in his opinion petitioner possesses the moral qualifications required for readmission to the Bar and that petitioner "is held with considerable regard by lawyers and by members of the judiciary."

Letters of a similar nature from four former Chancellors of the [     ] Bar and from many judges of the County of [     ] were presented to the hearing committee (Exhibits "A" and "B").

The testimony of friends, associates, and members of the Bar and Bench is entitled to careful consideration in determining petitioner's fitness to resume the practice of law. While it is true that in previous testimony, Petitioner denied that he felt guilty for the crimes for which he was convicted, Petitioner did say that:

"I truly regret that I became involved in the various matters which resulted and caused my present predicament. Both I and my family have suffered intensely from my actions. I wish to make amends for my past misconduct . . ."

• • •

. . . I am more aware than ever of the fact that I did something years ago which was a discredit to the practice of law, a profession I loved. I was wrong

when I got involved in activities which caused my criminal conviction and confinement."

Petitioner has expressed regret for his misconduct and acknowledged that his conduct was a discredit to the practice of law. He further acknowledged that he was wrong when he engaged in the activities which led to his criminal conviction.

The Disciplinary Board felt that the case of In Re Hiss was apposite here. In that case, Algier Hiss, who had been disbarred from the practice of law following a conviction of perjury before a Grand Jury, applied to the Supreme Judicial Court of Massachusetts for reinstatement. The standards governing reinstatement in Massachusetts are similar to those of Pa. R.D.E. 218(c)(3)(1). The Supreme Court of Massachusetts declined to hold that a Petitioner should be disqualified from reinstatement solely because he continued to assert his innocence after his conviction. The Hiss Court stated, in relevant part:

"Though we deem prior judgments dispositive of all factual issues and deny attorneys subject to discipline proceedings the right to relitigate issues of guilt, we recognize that a convicted person may on sincere reasoning believe himself to be innocent. . . . Simple fairness and fundamental justice demand that the person who believes he is innocent though convicted should not be required to confess guilt to a criminal act he honestly believes he did not commit. For him, a rule requiring admission of guilt and repentence creates a cruel quandary he may stand mute and lose his opportunity; or he may cast aside his hard-retained scruples and, paradoxically, commit what he regards as perjury to prove his worthiness to practice law. . . . Honest men would suffer permanent disbarment under such a rule. Others, less sure of their moral positions, would be tempted to commit perjury by admitting to

a nonexistent offense (or to an offense they believe is nonexistent) to secure reinstatement. So regarded, this rule, intended to maintain the integrity of the bar, would encourage corruption in these latter petitioners for reinstatement and, again paradoxically, might permit reinstatement of those least fit to serve." 368 Mass at 457-9, 333 N.E. 2d at 436-7.

The Massachusetts Supreme Court made a distinction between rehabilitation and repentence and acknowledgement of guilt. It was the opinion of the Court of Massachusetts that rehabilitation is a primary consideration in the question of reinstatement. Requiring that petitioner acknowledge his guilt was not as important as showing that rehabilitation had taken place and that petitioner was now imbued with the determination to practice his profession according to the Code of Professional Responsibility.

Petitioner in the instant case, of course, did not continue to assert his innocence of the charges brought against him, but instead stated that he had now come to the realization that he was guilty of these crimes and that he regretted his conduct deeply.

The Disciplinary Board felt that petitioner acknowledged his wrong doing at the time of his hearing on May 25, 1983 and that such was also repudiation of his earlier denial of guilt and acknowledgement that he still considered himself to be a lawyer. The board felt that petitioner may have had some belief that he was innocent of income tax charges, notwithstanding his guilty plea, but concluded that his earlier assertion should not prevent him from being reinstated in light of his present acknowledgement of guilt.

Counsel for petitioner pointed out at the oral argument that petitioner need not prove that "the

public interest will be served" but only that "his resumption of practice will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest."

Petitioner has completed a program of rehabilitation. While in prison, he worked in the physio-therapy department of the prison hospital. He conducted Jewish religious services for Jewish inmates. He earned a good institutional record. Following his release from prison, he was discharged from parole on August 16, 1978 by the United States Parole Commission. It was the Commission's opinion that Petitioner would not engage in any future criminal conduct.

Petitioner had been active in the Jewish War Veterans, the Veteran Guard of the [     ] Regiment of the [     ] Division, as an Honorary Major, and served on their Pension Board, the [     ], [     ] Youth Services, [     ] Club aiding blind children, and [     ]. He has served on the Board of Governors of [     ], which maintains a house for elderly senior citizens. He has also been suggested for the Board of Directors of [     ] Savings & Loan Association. Since his release from prison, he has received awards for his many activities including:

(a) [     ] Post, Jewish War Veterans for service to the Post for 1981, 1982 and 1983;

(b) Congregation [     ] in recognition of devoted service to the synagogue and the community;

(c) Veteran's Guard, 3rd Infantry National Guard of Pennsylvania;

(d) [     ] County Council of Jewish War Veterans;

(e) [     ] School;

(f) [     ] Club for blind children;

(g) Chapel of [     ];

(h) [　　　] Lodge;
(i) [　　　] International;
(j) [　　　] Neighborhood Council;
(k) Congregation Sons of [　　　];
(l) [　　　] of World Wars I and II;
(m) Law Alumni of [　　　] University;
(n) [　　　];
(o) [　　　];
(p) Jewish National Fund of [　　　];
(q) [　　　] of the Commonwealth of Pennsylvania; and
(r) [　　　].

Petitioner has attempted to keep current with the law. He has attended law courses given by the [　　　] Alumni (Condominium Law, Criminal Law, Family Support Law). He has attended seminars at [　　　] Law School in Estate, Business Law, Civil Litigation, Bankruptcy, Criminal Law, Estate Planning, Family Law, Patents, Trade Mark and Real Estate Law. He reads the Atlantic Reporter and discusses the cases with other attorneys.

Petitioner's fitness for reinstatement was attested to by eleven attorneys, all of whom have known him for many years.

## IV. CONCLUSIONS OF LAW

Petitioner has met the burden of proof required by Pa. R.D.E. 218(c)(3)(1). He has demonstrated by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that his resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest.

## V. RECOMMENDED DISPOSITION OF PETITION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends to the Supreme Court of Pennsylvania that petitioner, [       ], be reinstated to the practice of law in the Commonwealth of Pennsylvania and that the court direct that all necessary expenses incurred by this board be assessed to petitioner.

Mrs. Neuman and Mr. Helwig did not participate in the adjudication.

### ORDER

And now, this May 22, 1984, the recommendation of the Disciplinary Board dated March 9, 1984, is accepted, and the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.